UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-81044-CIV-RYSKAMP/VITUNAC

BELLA PAPARO,

    Plaintiff,

v.

ORTHO MCNEIL PHARMACEUTICAL
D/B/A JOHNSON AND JOHNSON,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court pursuant to Defendant Ortho-McNeil, Inc.'s (erroneously identified in the Complaint as Ortho McNeil Pharmaceutical d/b/a Johnson and Johnson) ("Defendant") Motion for Judgment on the Pleadings or, in the Alternative, Final Summary Judgment, filed November 7, 2006 **[DE 23]**.  Plaintiff Bella Paparo ("Plaintiff") responded on December 12, 2006 **[DE 33]**.  Defendant replied on December 7, 2006 **[DE 31]**.[1]  This motion is ripe for adjudication.

### I. BACKGROUND

Plaintiff's physician, Dr. Nathalie Barnes ("Dr. Barnes"), a Board Certified Urologist specializing in female urology and incontinence, prescribed Ditropan XL to Plaintiff for urinary incontinence in 2002.  (Barnes Depo., 5-6; Pl. Depo., 12, 18).  Plaintiff claims that ingestion of

---

[1] On November 27, 2006 **[DE 30]**, the Court, not having received a response to the Motion for Summary Judgment, issued Plaintiff and Order to Show Cause requesting that she respond to said motion within ten days.  On December 7, 2006 **[DE 31]**, Defendant filed its Reply, essentially notifying the Court that Plaintiff had yet to respond to the Motion for Summary Judgment.  Plaintiff filed three identical responses on December 11, 2006 **[DE 33, 34, 35]**.  The Court will accept the late-filed response.

Ditropan XL caused her to lose her teeth and that there was no warning that dry mouth could result in tooth decay. (Compl., 8; Pl. Depo. 31-32). Plaintiff alleges that Defendant negligently labeled, marketed and promoted the drug Ditropan XL and failed to warn her of the risk that her teeth could fall out subsequent to ingesting the drug. (Complaint, 6-8).

Plaintiff read the prescribing information sheet and insert that accompanied the Ditropan XL when she filled the prescription. (Pl. Depo., 18-19). Plaintiff recalls that such warned that Ditropan XL "causes dry mouth." (Pl. Depo., 18-19, 51; Pl. Answer to Interrogatory No. 6). Plaintiff had seen television commercials warning that Ditropan XL could result in dry mouth. (Pl. Depo., 19, 40).

Dr. Barnes became aware of the side effects of Ditropan XL and other anticholinergic medications during her residency in the mid-1990s. (Barnes Depo., 32). She also learned in medical school and at a urological conference in 2000 that dry mouth can lead to tooth decay. (Barnes Depo., 12, 33). When Dr. Barnes prescribes Ditropan XL, she warns her patients that the most common side effect is dry mouth. (Barnes Depo., 11). She further warns her patients that the side effect of dry mouth can contribute to tooth decay. (Barnes Depo., 12). She also warns patients to take especially good care of their teeth because they might develop tooth decay. (Barnes Depo., 12). Dr. Barnes testifies that she provides this advice to every patient to whom she prescribes Ditropan XL, and that she did so with Plaintiff. (Barnes Depo., 12, 14, 15-16). Dr. Barnes revisits the potential side effects of Ditropan XL, including the possible long-term effects of dry mouth and tooth decay, on every visit with her patients who are taking the medication because due to concern for the possibility of side effects in elderly patients. (Barnes

3

Depo., 17, 21-22). Dr. Barnes would have revisited the potential side effects of dry mouth and tooth decay with Plaintiff. (Barnes Depo., 17).

Defendant has moved for judgment on the pleadings, and, in the alternative, for summary judgment. The Court will treat the motion as one for summary judgment as it will consider matters outside of the pleadings in reaching its decision. See Fed.R.Civ.P. 12(c).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). An issue is "material" if it is a legal element of the claim under applicable substantive law that may affect the resolution of the action. See Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). An issue is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. See id., 106 S.Ct. at 2510. The movant may meet this standard by presenting evidence demonstrating the absence of a dispute of material fact or by showing that the nonmoving party has not presented evidence in support of an element of its case on which it bears the burden of proof. Celotex, 477

                                                                                                    4

U.S. at 322-23, 106 S.Ct. at 2552-53.  The moving party need not supply "affidavits or other similar materials negating the opponent's claim."  Id., 106 S.Ct. at 2552-53.

Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)).  Although the nonmovant need not present evidence that would be admissible at trial, it may not rest on his pleadings.  Id., 106 S.Ct. at 2553.  "[T]he plain language of rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322; 106 S.Ct. at 2552.  See also Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1281-82 (11th Cir. 1999).

### III.  DISCUSSION

Defendant seeks summary judgment on the grounds that Plaintiff's claim is barred by the learned intermediary doctrine.  The learned intermediary doctrine means that a drug manufacturer's duty to warn runs to the physician, not a patient.  "The duty to warn is fulfilled by an adequate warning given to those members of the medical community lawfully authorized to prescribe, dispense and administer prescription drugs."  Buckner v. Allergan Pharmaceuticals, Inc., 400 So.2d 820, 822 (Fla. 5th DCA 1981).  The Buckner court held as follows:

> [w]here a product is available only on prescription or through the
> services of a physician, the physician acts as a learned intermediary

> between a manufacturer or seller and a patient. It is his duty to inform himself of the qualities and characteristics of those products which he prescribes for or administers to or uses on his patients, and to exercise an independent judgment, taking into account his knowledge of the patient as well as the product… .

Id. at 823 (citing Terhune v. A.H. Robbins Co., 577 P.2d 975, 978 (1978)). In determining the adequacy of the warning, the critical inquiry is whether it was adequate to warn the physician of the possibility that the drug caused the injury alleged by the plaintiff. See Upjohn Co. v. MacMurdo, 562 So.2d 680, 683 (Fla. 1990). The adequacy of a warning is a question of law where the warning is accurate, clear and ambiguous. See Felix v. Hoffmann-LaRoche, Inc., 540 So.2d 102, 105 (Fla. 1989).

In Felix, a mother brought a wrongful death action against a drug manufacturer for the death of her child, alleging that the death resulted from severe birth defects caused by her ingestion of acne medication during pregnancy. See id. at 103. The package insert accompanying the medication stated that patients that are or that intend to become pregnant should not take the medication, and that although no abnormalities to the human fetus had yet been reported, animal studies indicated that defects and authorities could occur. See id. While the adequacy of the warning is generally a jury question, the Felix court held that the warning concerning dangerous side effects was sufficiently clear and ambiguous such that it could be decided as a matter of law. See id. at 105. Moreover, Felix held that even if the warning provided had been inadequate, any failure on the part of the manufacturer to provide an adequate warning was not the proximate cause of the injury because the physician had sufficient independent knowledge of the risks that an adequate warning would have communicated. See id. at 105. Specifically, the Court stated:

> We agree that any inadequacy in the Accutane warning could not have been the proximate cause of the birth defects in this case. Insofar as the liability of the manufacturer is concerned, it makes no difference that the mother testified that Dr. Greenwald did not warn her of the danger of taking Accutane while she was pregnant. While this would present a factual issue in a claim against the doctor, the drug manufacturer could not be penalized for the failure of the doctor to impart knowledge concerning the dangers of the drug of which the doctor had been warned and was aware.

Id. See also Christopher v. Cutter Laboratories, 53 F.3d 1184, 1192 (11th Cir. 1995) (holding that a causal link between a manufacturer's failure to warn and the patient's injury is broken if the treating physician had substantially the same knowledge that an adequate warning would have communicated to him).

Plaintiff has testified under oath that she lost her teeth and suffered damage to her gums, but the mere fact that Plaintiff is injured does not create a factual issue as to Defendant's potential liability for such injuries. Dr. Barnes testified and established that she possesses independent knowledge of the risks that would have been communicated in an adequate warning. See Felix, 540 So.2d 105. Specifically, Dr. Barnes testified that she had knowledge of the risks associated with Ditropan XL, including the very risk complained of, dry mouth leading to tooth decay. Plaintiff has not controverted any of these facts. Accordingly, Defendant is entitled to summary judgment pursuant to the learned intermediary doctrine.

Defendant is also entitled to summary judgment on the alternative ground that Plaintiff has failed to present an expert witness in support of her claim of inadequate warning. "[B]ecause a manufacturer's duty to warn of a drug's hazard runs to the physician, the adequacy or inadequacy of the manufacturer's warning to inform a physician must also be proved by expert

testimony." Haggerty v. The Upjohn Co., 950 F. Supp. 1160, 1168 (S.D. Fla. 1996) (citing Upjohn Co., 562 So.2d at 683; Felix, 540 So.2d at 104)).  Plaintiff has not presented any expert witnesses, and the deadline to identify expert witnesses has long since passed.  Plaintiff's claim fails as a matter of law because she is unable to establish causation absent the presentation of expert testimony.

## IV.  CONCLUSION

THE COURT, having considered the pertinent portions of the record and being otherwise fully advised, hereby

ORDERS AND ADJUDGES that the Motion for Judgment on the Pleadings or, in the Alternative, Final Summary Judgment, filed November 7, 2006 **[DE 23]**, which the Court has treated as a Motion for Summary Judgment, is GRANTED.  Final judgment shall be entered by separate order.

DONE AND ORDERED at Chambers in West Palm Beach, Florida this 10th day of January, 2007.

Copies provided:  S/Kenneth L. Ryskamp
all parties and counsel of record  KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE